580 So.2d 990 (1991)
Pamela GUILLORY, Plaintiff-Appellee,
v.
Pamela L. ARCENEAUX, et al., Defendants-Appellants.
Nos. W90-1280, W90-1281.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1991.
Peter J. Giarrusso, Wm. J. Guste, Jr., Baton Rouge, for defendant/applicant Dept. of Transp. and Development.
Pitre, Yoes, Kay & Halley, Henry Yoes III, D. Bruce Jones, Lake Charles, for defendant/applicant Louisiana Ins. Guar. Ass'n.
E.C. Hunt, Jr., Lake Charles, for plaintiff-respondent.
Gold, Weems, Bruser, Sues & Rundell, Raymond Brown, Jr., Alexandria, Plauche, Smith & Nieset, Frank M. Walker, Jr., Lake Charles, for defendants.
Before STOKER, DOUCET and KING, JJ.
STOKER, Judge.
The plaintiff seeks mental anguish damages resulting from her involvement in an accident, which occurred on a public highway, in which she did not sustain any physical *991 injury. Briefly stated, the plaintiff alleges the following facts. While driving on Interstate 210 in Lake Charles, Louisiana, and at a time of icy road conditions, plaintiff came upon the body of Pamela L. Arceneaux lying in the highway, and plaintiff was unable to avoid running over Arceneaux. Plaintiff alleges that this experience causes her to "suffer traumatic emotional distress." In this suit plaintiff asserts that the following defendants caused her damages: Pamela L. Arceneaux herself, the State of Louisiana (Department of Transportation and Development), and Harvey J. Lee, who drove the vehicle which struck Pamela L. Arceneaux and caused her to be lying prostrate in the highway.
We granted supervisory writs in this case upon applications of the State, through the Department of Transportation and Development, and Louisiana Insurance Guaranty Association which complain of the failure of the trial court to sustain exceptions of no cause of action and no right of action.[1] Therefore the case is before us only on the basis of the allegations of the plaintiff's petition and not on the basis of facts developed in a trial.

ISSUE
The general issue before us is whether plaintiff may recover for alleged mental anguish damages without having sustained physical injury but arising out of an incident in which she was an active participant.
The briefing and argument in this case has confused and complicated the issue somewhat by attempts of counsel to resolve the issue under the "bystander recovery rule" adopted by the Louisiana Supreme Court in Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990) and by the "direct, special statutory duty rule" adopted by the Louisiana Supreme Court in Clomon v. Monroe City School Bd., 572 So.2d 571 (La.1990). As we review the case, it is governed by neither Lejeune nor Clomon. The exceptions may be decided here under traditional tort principles, and if Lejeune and Clomon are of any aid, it will only be through some broad analogies.
Early on we observe that the exceptors' invocation of the exception of no right of action is inappropos. The arguments presented by exceptors concerning no right of action clearly are directed only to the question of whether the plaintiff has set forth a cause of action. If she has, Pamela Guillory certainly has a right of action.

FACTS
Before proceeding further it is necessary that we expand the facts and explain what parties are before the court on this no cause of action issue and how they came into the picture. It should be understood, of course, that these are pre-trial facts as alleged in the plaintiff's petition, which are accepted as true merely for deciding whether a cause of action has been set forth. See Broussard v. Broussard, 544 So.2d 109 (La.App. 3d Cir.), writ denied, 548 So.2d 1248 (La.1989).

Plaintiff's Allegations
On February 6, 1989, at 7:39 p.m. Guillory was driving west on I-10 in Lake Charles when she entered the westbound entrance to the I-210 bypass. At that time the bypass was icy and unlit. As Guillory drove around the curve on the bypass, she was confronted with a situation which was created when Pamela Arceneaux apparently lost control of her vehicle and struck the bypass guardrail. After apparently leaving her vehicle, Arceneaux was struck by an eighteen-wheeler owned by Sam Lee and driven by Harvey J. Lee. As a result of the accident between the eighteen-wheeler and Arceneaux, Arceneaux was lying injured on the interstate roadway when Guillory came upon the accident scene.
*992 Guillory states in her petition that when she came upon Arceneaux she attempted to brake, but was unable to stop and ran over Arceneaux, who ended up trapped beneath Guillory's vehicle. Plaintiff alleges that Arceneaux is now deceased and the implication is that Arceneaux may have died as a result of being struck by Guillory's vehicle.

The Parties In The Suit
Guillory made Pamela Arceneaux's liability insurer a defendant and alleged that Arceneaux was "negligent for deserting and leaving her vehicle in a position of peril without proper markings of flares and creating a hazardous condition for other vehicles also traveling westward on Interstate 210 Bypass." Arceneaux's liability insurer, Louisiana Farm Bureau Casualty Insurance Company, filed an answer on its behalf and is not involved in the exceptions before this court. Arceneaux's estate is not a defendant.
Guillory named as defendants Harvey J. Lee and Sam Lee and their liability insurer, Illinois National Insurance Company. These defendants did not file exceptions and are not involved in the issues presently before us. The allegations regarding the Lees are "[t]hat Harvey J. Lee was negligent for failing to keep a proper lookout and traveling at an excessive rate of speed for prevailing conditions; that his negligence is imputable to Sam Lee under the doctrine of respondeat superior."
Guillory alleged that she carried underinsured motorist insurance coverage with Champion Insurance Company (which became defunct), and she therefore made Louisiana Insurance Guaranty Association (LIGA) a defendant for her underinsured motorist claims. As noted above, LIGA is an exceptor and its exceptions are before us in this matter. Consequently, while neither Pamela L. Arceneaux nor her insurer are before us, we do have before us the role played by Arceneaux in the incidents and alleged accidents and her alleged negligence as a cause of Guillory's alleged mental anguish damages.
Finally, Guillory alleges "that the Louisiana Department of Transportation [and Development] was negligent for failing to adequately monitor its bridges and roadways to be cognizant of icing conditions and to adequately forewarn traveling motorists of hazardous conditions which might endanger their lives, or alternatively to close same."
The plaintiff, Pamela Guillory, alleges causation broadly by stating that "as a result of these accidents heretofore described plaintiff has suffered and continues to suffer" the mental anguish damages she claims.

LAW
As noted above, under the facts alleged and accepted as true for determining whether plaintiff has set forth a cause of action, Pamela Guillory was personally involved in an accident in which she drove a vehicle which struck the body of Pamela L. Arceneaux lying in the public highway. Guillory was a participant in this event. Her mental distress and mental anguish damages are not grounded on her emotional reaction as a bystander to seeing a third party (Arceneaux) sustain injury, as was the case in Lejeune. The facts are more analogous to the facts of Clomon. However, unlike Clomon, we discern no direct, special statutory duty running in favor of the class of motorists within which plaintiff may be classified. Therefore, the jurisprudence recently announced in these cases by the Louisiana Supreme Court has no application.
If Pamela Guillory had alleged that her impact with the body of Pamela L. Arceneaux had caused physical injury (say from being thrown about the inside of her vehicle), she would surely have set forth a cause of action. After a trial development of the facts, a duty risk analysis under well recognized Louisiana tort principles could well result in recovery of damages for physical injury. We see no reason why, on the same facts, Pamela Guillory should not have a cause of action for mental anguish damages as well.
In our view, attempts to resolve this case under principles set forth in Lejeune and Clomon only complicate and confuse proper *993 analysis. As they are relied on so heavily by both plaintiff and defendant, along with Devereux v. Allstate Ins. Co., 557 So.2d 1091 (La.App. 2d Cir.1990), we find it necessary to discuss and distinguish them. Therefore, we will proceed with discussions of the Lejeune case, the Clomon case, the inapplicability of the principles set forth in Lejeune and Clomon to the case before us and, finally, a brief discussion of Devereux.

Lejeune v. Rayne Branch Hospital
Lejeune dealt with two propositions: (1) by overruling jurisprudence which had existed since the middle of the last century, Black v. Carrollton R.R. Co., 10 La.Ann. 33 (1855), the Louisiana Supreme Court held that recovery may be had for mental pain and anguish damages sustained by a person not directly injured but because of the negligent infliction of injury on a third person, and (2) certain guidelines or modifications and restrictions should be followed in applying the recovery rule recognized in Lejeune. The general proposition recognized in (1) above is referred to in general jurisprudence as "bystander recovery rules." This terminology has now been adopted by our Louisiana Supreme Court. Five members of the Lejeune court subscribed to the adoption of a bystander recovery rule for Louisiana. Two justices dissented on the proposition of overruling Black v. Carrollton R.R. Co., supra. Only three of the five justices subscribed to the general guidelines mentioned in (2) above. Two justices favored imposing more restrictive guidelines.
It is not necessary to our considerations that we list or discuss all four of the guidelines, modifications or restrictions set forth in Lejeune which appear on pages 569 through 571 of the Lejeune opinion. What the litigants in the present case before us discuss at length is the fourth Lejeune restriction, which is not clearly a restriction at all. In the Lejeune opinion, the supreme court majority, speaking through then Justice Calogero, stated that the fourth restriction concerns the relationship of the claimant and the direct victim. The court stated it would be plausible to restrict the class of claimants who could recover under the bystander rule to claimants having a close relationship with the victim; however the majority commented that it was also plausible to restrict recovery to "all close relatives, such as spouse, children, parents and siblings." The court found it unnecessary to decide this question because the claimant in Lejeune was the wife of the victim who was alleged to have been attacked by rats while in the defendant hospital. Mrs. Lejeune would fall within any class that might be delimited; consequently, a decision on delimiting the class of claimants could be left "for another day." Lejeune, at p. 570.
The two justices who concurred on the general proposition stated that they would have gone ahead and delimited the class of claimants for non-traumatically caused mental anguish damages, and they would have limited recovery by following the limitations imposed by the Louisiana Civil Code, namely to the same persons entitled to recovery of damages resulting from the negligently caused death of a closely related third person. Lejeune at p. 571.
Although counsel for plaintiff and defendants in the Guillory case before us appear to believe that Lejeune either did or did not establish at least a "close relationship" requirement in bystander recovery cases, we think the matter was left open"for another day." In any event we are not faced with a bystander case as such, as we will discuss more fully.

Clomon v. Monroe City School Bd.

As the facts of Clomon bear some close analogy to the facts of the case now before us, we will briefly outline the salient facts of Clomon. The Louisiana Supreme Court decided Clomon after a trial of the case and action by the trial court and the court of appeal. The plaintiff, Sonya R. Clomon, prevailed at all three levels.
Antonio Benjamin was a four year old, handicapped, special education student. A mini-bus designated for handicapped children stopped to allow Antonio to leave the bus and cross the street to his home. Clomon *994 was driving a vehicle and approaching the bus. A special education attendant conducted Antonio to the front of the bus, left him and re-boarded the bus. The bus driver, assuming that Antonio had crossed the street safely, disengaged the school bus's warning lights and stop signs. Clomon did not immediately see Antonio who was standing in the center lane of the street by the driver's side of the bus. When Clomon did see Antonio, she unsuccessfully attempted to avoid striking him. Antonio died from injuries received in the accident. Sonya Clomon was found to have been negligent, but so were the school bus special education attendant and school bus driver. Sonya Clomon was allowed to recover damages against the defendant school board after the damages were apportioned, attributing 30% of the fault to her.
Clomon's recovery was affirmed by the Louisiana Supreme Court by a plurality of the court, two justices concurring and two justices dissenting. Two justices joined Justice Dennis in an opinion which held that Sonya Clomon "cannot succeed under Lejeune's bystander recovery rule because she did not have a close direct relationship with the victim as required by the rule." However, these members of the supreme court found that Lejeune did not foreclose "the development of rules or decisions permitting recovery for emotional distress from a tortfeasor who owed the plaintiff a special, direct duty created by law, contract or special relationship." Clomon, at p. 575. These members of the supreme court found such a special, direct duty in statutory law, LSA-R.S. 32:80. This statute provides that a school bus driver must activate the bus's alternatively flashing signal lights whenever the driver stops or is about to stop on the highway for the purpose of receiving or discharging school children. (These three justices also found a duty not to prematurely deactivate the signals or resume the trip.) While these justices found that the statute created a duty designed to protect the safety of school children, it was also designed to protect motorists such as Clomon from suffering emotional harm to themselves as a result of injuring school children, and motorists are entitled to rely on bus drivers to perform these duties. If a school bus driver fails in his duty to give the proper signal, causing a motorist to injure a child, any harm suffered by the motorist falls within the class of harms the statute was intended to guard against. Consequently, these three justices held that Sonya Clomon could recover for her mental anguish damages, reduced by the percentage of fault attributed to her.
In the view of the two concurring justices any reference to Lejeune was unnecessary. They found reason to allow Sonya Clomon to recover mental anguish damages as a type of damage simply because she was a participant in the event which resulted in the death of Antonio Benjamin, caused in part by the defendant's employees. In the context of the case before us, we think it worthwhile to quote the concurrences of the two justices, Justice Watson and Justice Hall:
"WATSON, Justice, concurring.
I concur in the result reached by the majority in the extremely well written and well supported opinion.
However, in my view this is not a `bystander recovery' case and I therefore believe that much of the comparison with Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990), where I dissented, is not necessary. Here the plaintiff was not a bystander; she was physically involved in the accident. For this reason, I would hold that she is entitled to recover for her emotional damages just as she would be if she had suffered physical damages or a combination of the two. Some might regard the distinction I see as a quibble, but awarding damages to a person actually involved in an accident, no matter what the nature of the damages, is a much more precise and concrete application of Civil Code article 2315 than formulating and applying the necessarily arbitrary guidelines necessitated by the allowance of `bystander recovery.'
Therefore, I respectfully concur in the result.

*995 HALL, Justice (concurring).
I subscribe to the majority opinion and add these concurring reasons.
The majority opinion quite properly distinguishes this case from Lejeune. Lejeune is a bystander case in which the plaintiff sought to recover emotional damages suffered as a result of witnessing injuries to a third person caused by the defendant's breach of duty owed to the third person. Here, plaintiff was not a bystander. As a result of the defendant's breach of duty owed to her, she became a participant in the accident. Plaintiff does not seek to recover as a result of witnessing an injury to another, she seeks to recover because she was involved in a traumatic accident as a result of the defendant's negligence. Her emotional distress suffered during an accident in which she was involved and which was caused by defendant's negligence is compensable. Since she was a participant in the accident she is entitled to recover because of her concern for her own well-being, not merely because of her concern for a third party as a witness to the accident. While she probably suffered no fear for her physical well-being, she likely suffered great fear of the consequences of having hit a child and severe guilt and remorse. This emotional distress, conceded by all to be serious and disabling, was caused by the negligence of the defendant, and therefore plaintiff is entitled to recover for it." (Emphasis added.)

Lejeune and Clomon As They May Apply In This Case
We do not read the opinion of Justice Dennis in Clomon as denying the possibility of a recovery on the basis set forth in the two concurring opinions. Justice Cole dissented to express disagreement with the failure to impose the guidelines laid down in Lejeune and to resort, on the other hand, to the special, direct statutory duty theory adopted in the opinion of Justice Dennis.
Clearly the bystander recovery rule aspect of Lejeune has no application or bearing on the facts or legal issues of the case of Pamela Guillory before us. The general boundaries, guidelines, modifications or restrictions of Lejeune as to what class of claimants may recover was left open. Clomon affirmed (through five justices) that the bystander recovery rule had no application.
What we have to determine is whether Pamela Guillory may recover (if proven) mental anguish damages as a result of having been placed in a position in which her actions contributed to the injury or death of Pamela L. Arceneaux, with whom she had no personal relationship. There is no suggestion in plaintiff's petition that she and Pamela L. Arceneaux were anything but strangers. From a policy standpoint we might impose by analogy one of the alternatives suggested in Lejeune in its discussion of the fourth restriction. Those alternatives would be to either (1) restrict recovery to claimants having a close relationship with the victim, or (2) restrict recovery to close relatives. (In our opinion at the court of appeal level in Lejeune, 539 So.2d 849 (La.App. 3d Cir.1989), we suggested a limitation to the categories of family members entitled to recover wrongful death damages under LSA-C.C. art. 2315.2.)
In considering policy implications, we note that we are not faced with a case presenting a possibility that multiple parties might claim mental anguish damages because of injury to a third party victim. There is only one party who can make the claim here and that party was an actor, a participant in the incident causing the injury and possible death of the victim. As we noted earlier in this opinion, if Pamela Guillory had sustained physical injury as a result of trying to avoid hitting Pamela L. Arceneaux and of actually running over her, there would be no question that (assuming liability) she could recover damages for that type of personal (physical) injury.
We are impressed by the reasoning of the court of appeal opinion authored by Judge Marvin in the Clomon case, 490 *996 So.2d 691 (La.App. 2d Cir.1986), which came up before that court on an exception of no cause of action. That court advanced the duties spelled out in LSA-R.S. 32:318 as a source of duty owed by the school board through its employees (later adopted by the supreme court), but it was not limited to the statutory duty. However, as to the class of claimants who should be allowed to recover, the court of appeal observed:
"If this plaintiff had alleged the accident caused her physical injury, we deduce that even the trial court would have overruled the exception of no cause of action. The duty imposed on the employees of the board to escort the special education students from the school bus to a place of safety is obviously intended to prevent accidents between the departing child and a motorist. The same purpose exists in the statutory requirement that the school bus driver must have and must operate the warning signals on the school bus when a child is departing the bus. See LRS 32:318(B).
The fact that plaintiff's alleged injury is from emotional and not physical trauma does not diminish the association of the alleged duty of the board's employees with the risk of injury to those involved in the vehicle-pedestrian accident. Policy inquiries are necessary to make the association and to resolve the scope of duty question. The inquiries question the ease of associating the risk with the particular injury, the administrative burden that may result from the recognition of the scope of the duty, the relative economic ability of each party to liquidate the loss, the moral culpability of each party, the type and the social and economic utility of the defendant's activity, and the historical development of either or both the statutory law and the case law. See McNamara, The Duties and Risks of the Duty Risk Analysis, 44 La.L.Rev. 1227 at 1234 (1984); Robertson, Reason Versus Rule in Louisiana Tort Law: Dialogues on Hill v. Lundin & Associates, Inc., 34 La.L.Rev. 1 (1973); Malone, Ruminations On Dixie Drive It Yourself Versus American Beverage Company, 30 La.L.Rev. 363 (1970)."
At the supreme court level the concurring justices adopted the position that there was no distinction between emotional distress and physical injury with respect to the right of recovery.

Devereux v. Allstate Ins. Co.

Another case bearing on the subject which has been cited for our attention is Devereux v. Allstate Ins. Co., 557 So.2d 1091 (La.App. 2d Cir.1990). The case was heard before a three judge panel of the Court of Appeal for the Second Circuit. In a plurality opinion the court of appeal denied a motorist mental anguish damages where the plaintiff motorist (Devereux) struck and killed a pedestrian (Patterson) who was walking at night just inside the highway. The assigned writer of the opinion, Judge Norris, held that the pedestrian negligently walking in the highway and another driver whose vehicle lights blinded the plaintiff owed a duty to plaintiff to protect him from mental anguish resulting from negligent infliction of injury to another person such as Patterson himself. However, Judge Norris applied the fourth restriction of Lejeune and held that there was no relationship at all between Devereux and Patterson, the victim. Absent a close relationship, Judge Norris held there could be no recovery for mental anguish damages. Devereux had physical injuries as well as mental anguish damages. Consequently, Judge Norris adopted the solution of reducing Devereux's damages.
The two concurring judges (including Chief Judge Hall, now a member of the Louisiana Supreme Court) wrote these concurrences:
"HALL, Chief Judge, concurring.
I concur in the result, that is, the reallocation of fault and the reduction of general damages which I view as excessive, regardless of the applicability of the principles of LeJeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990). However, it is my view that LeJeune is not applicable to this case because LeJeune dealt with recovery by a plaintiff who was *997 not directly injured from a defendant who caused injury to a third person resulting in indirect mental or emotional injury to the plaintiff. Here, plaintiff was directly injured by the defendant, as the result of an accident caused by the defendant's breach of a duty owed to plaintiff as a motorist. There was no injury to a third person involved insofar as plaintiff and the defendant pedestrian are concerned. Plaintiff's direct injuries were both physical and emotional, and both have long been recognized as compensable. Lejeune deals with altogether different circumstances and principles and has no applicability. Lejeune expands recovery to a bystander, but establishes certain criteria for recovery. Those criteria are not applicable where the plaintiff was physically involved in the accident.

Further, emotional injury arising out of an accident is the sum total of the experience and is hardly susceptible to being quantitatively analyzed on the basis of what part of the experience caused what part of the injury.
HIGHTOWER, Judge, concurring.
I respectfully concur, pretermitting, however, whether the tenor of LeJeune, supra, recognizes a duty by a pedestrian to protect a motorist from the mental anguish that might be occasioned by that pedestrian's own death." (Emphasis added.)
In our view, Devereux can give no comfort to the exceptors in the case before us. We agree with then Judge Hall's statement appearing in the above quotation that "[p]laintiff's direct injuries were both physical and emotional, and both have long been recognized as compensable." In the case before us, however, and as noted, Guillory alleges she sustained emotional damages only.
For the foregoing reasons we are of the opinion that the trial court properly overruled the defendant's exceptions of no cause of action. Defendant's exception of no right of action was also properly overruled as having no merit at all.

CONCLUSION
Our holding with regard to the exceptions in this case does not relieve plaintiff of the burden of proof on trial of this case, both as to liability and quantum. Our holding does not make the State or LIGA automatically liable without further inquiry. The facts must be developed and subjected to duty-risk analysis and the application of pertinent law. All we hold here is that plaintiff has stated a cause of action against the State and LIGA. Each may have defenses to assert, and in the case of the State some consideration may have to be given to such concepts as the "discretionary function doctrine." See Fowler v. Roberts, 556 So.2d 1 (La.1989) and United States, Petitioner v. Thomas M. Gaubert, ___ U.S. ___, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991).
Recently the Supreme Court of Louisiana considered the question of liability for negligent conduct which causes only mental disturbance without accompanying physical injury. Moresi v. Dept. of Wildlife & Fisheries, 567 So.2d 1081 (La.1990). The supreme court noted that the great majority of jurisdictions do not hold wrongdoers liable for such mental disturbance. However, the supreme court noted many deviations from the general rule in our jurisprudence, but added this observation:
"There may be other cases, but all of these categories have in common the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious."

Moresi, at p. 1075.
In Moresi the Louisiana Supreme Court denied recovery because the act complained of (a mistakenly communicated veiled threat intended in jest for another person, a friend of defendants) did not result in consequences which the court thought fell "within any category having an especial likelihood of genuine and serious mental distress."
As we interpret these observations of the supreme court, recovery of mental anguish damages without physical injury or other *998 elements rests for the most part on the plaintiff carrying a heavy burden of proof.
We granted writs in this case prior to the date on which the Louisiana Supreme Court handed down its decision in Clomon. Before us, counsel for plaintiff urges that we should remand the case to the trial court for the purpose of allowing amendment of the petition to set forth a special, direct duty owed to plaintiff under statutory law so as to invoke the Clomon principle. Plaintiff cites LSA-R.S. 32:368 and LSA-R.S. 48:346 as possible sources of such a duty. We need not address this request. As we find that the plaintiff has set forth causes of action in her petition as originally filed, there is no need for us to order that plaintiff be given opportunity to amplify her petition as she sees fit. This is a matter to be addressed in the trial court after a remand. LSA-C.C.P. art. 1151.
For the reasons given above, the judgment of the trial court overruling the exceptions of no cause of action and the exceptions of no right of action filed by the State of Louisiana, through the Department of Transportation and Development, and by Louisiana Insurance Guaranty Association are affirmed. The costs of this appeal are assessed to exceptors.
AFFIRMED.
NOTES
[1] The basic record in this case sent up from the trial court is designated by the number W90-1280 on the docket of this court. The State of Louisiana, through the Department of Transportation and Development, and Louisiana Insurance Guaranty Association (LIGA) filed separate applications for supervisory writs. We numbered one W90-1280 and the other W90-1281. Both writs were granted. We issued an order consolidating the two matters for hearing. Both bear the same caption. We find no need to file separate opinions.